(No. 35785.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES MORRISON *et al.,* Plaintiff in Error.

*Opinion filed Sept. 22, 1961.—Rehearing denied Nov. 29, 1961.*

Leon A. Kovin, of Chicago, appointed by the court, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred

G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

At a bench trial in the criminal court of Cook County, the defendant, James Morrison, together with one William Glass, was convicted of the unlawful sale of narcotic drugs and sentenced to the penitentiary for a term of not less than ten nor more than twenty years. The conviction of Glass has been previously affirmed by this court, (*People v. Glass*, 16 Ill.2d 595,) and it is Morrison who has sued out the present writ of error contending he was not proved guilty beyond a reasonable doubt, and that prejudicial error occurred due to the admission of improper evidence and the failure of the People to call an informer as a witness.

While most of the essential facts appear in the *Glass* opinion, some repetition is necessary to a more lucid consideration of the present defendant's contentions. The informer, one Herman Summers, was arrested by the police for the possession of marijuana and agreed to make a controlled purchase of drugs from Morrison, his alleged supplier. Morrison operated a restaurant in the city of Chicago and Glass was an employee there. After Summers had made a telephone call, he was furnished with $300 in currency, the serial numbers of which were recorded, and then drove directly to Morrison's restaurant with police officers following in another car. As the officers watched, Summers met Morrison in front of the restaurant and handed him the money. Morrison counted the money, then went into the restaurant, while Summers re-entered his car and drove away. The officers intercepted Summers and, after a brief conversation, allowed him to drive to a street intersection a few blocks from the restaurant. As he did so, the police maintained their surveillance.

According to the officers, Summers parked his car near

·the intersection and walked a short distance to where a Chrysler automobile was standing. In about five minutes Glass came out of a building and handed Summers a package found to contain marijuana. When both men started to enter the Chrysler automobile, the police arrested them.

Defendant and his wife were then arrested at the restaurant and a search of the wife's person produced $200 of the controlled money hidden in her undergarments. She stated that her husband had given her the money and when asked about the other $100, replied that she had given it to a collector in payment for a bill. James Bryson, one of the arresting officers, testified defendant said the money was his, and that his wife knew nothing about it. Additionally, according to Bryson, defendant called Summers a "stool pigeon" and, when asked if he would reveal the source of his supplier, replied he "would take his medicine."

When testifying in his own behalf, defendant admitted that he employed Glass at the restaurant and also that he owned the Chrysler car in which Glass and Summers had been arrested. He also conceded that he had received some money from Summers on the day in question, but denied having been involved in the sale of narcotics. He explained that Summers had given him $200 for safekeeping until such time as the latter could raise an additional $50 needed for a car payment.

Glass likewise denied that he had engaged in a sale of narcotics, or that he had received any instructions relative thereto from defendant. He said that, when arrested, he was doing no more than returning to Summers a package the latter had left at the Glass residence the night before. He did admit, however, that he "assumed" the package contained marijuana.

As was true when we reviewed the record at the instance of the codefendant Glass, it is our opinion the circumstances shown justify the inference that there was a common design to sell narcotics to Summers, and that the

evidence adequately supports the judgment. While defendant sought to explain his receipt and possession of $200 of the controlled money by saying he had received it from Summers for safekeeping until the latter could raise an additional $50, other undisputed evidence in the record shows that Summers had $280 on his person when arrested, and that defendant's wife, when searched at the police station, admitted that in excess of $200 had been received. Also detracting from defendant's story were his actions at the time of arrest when he charged Summers with being a "stool pigeon" and stated that he "would take his medicine" when asked to name his supplier. It is for the trial judge, sitting as the trier of the facts, to determine the credibility of the witnesses and to draw legitimate inferences from proved facts. On review, we will not disturb the findings of the court in such regards unless the proof is so unsatisfactory as to raise a reasonable doubt of guilt. (*People* v. *Glass,* 16 Ill.2d 595; *People* v. *Barney,* 15 Ill.2d 503.) We find nothing in the present record which gives us ground to disturb the finding of guilt reached by the trial court.

Complaint is made that the trial court erred in admitting into evidence the $200 in marked money taken from Mrs. Morrison's person, defendant's contention being that it was not competent evidence in face of his "positive proof" that he had received the money from Summers for safekeeping. The contention is devoid of merit. Proper foundation was laid by the prosecution showing the connection of the money to the crime charged and its relation to defendant's guilt. That the latter attempted to explain his possession of the money for an innocent purpose, went to its weight rather than to its competency as evidence.

Nor did error result from the prosecution's failure to call Summers as a witness. The prosecution is under no obligation to call an informer as a witness. (*People* v. *Aldridge,* 19 Ill.2d 176; *People* v. *Sustak,* 15 Ill.2d 115.) And while we said in *People* v. *Strong,* 21 Ill.2d 320, that an un-

explained failure to call an informer may give rise to an inference against the State, such an inference does not arise here. Upon inquiry by the court, a witness for the prosecution explained that Summers had jumped bail and fled the State of Illinois and, at the time of trial, was thought to be in custody in another jurisdiction.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*