(No. 35863.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JERRY CARR, Plaintiff in Error.

*Opinion filed September 22, 1961.*

James P. Chapman, of Chicago, for plaintiff in error.

William G. Clark, Attorney General, of Springfield, and Daniel P. Ward, State's Attorney, of Chicago, (Fred G. Leach, Assistant Attorney General, and John T. Gallagher, and M. Robert Ostrow, Assistant State's Attorneys, of counsel,) for the People.

Mr. Justice Hershey delivered the opinion of the court:

Defendant was convicted, after a trial by the court without a jury, of the crime of armed robbery and, in accordance with the Habitual Criminal Act, was sentenced to the penitentiary for a term of from seven years to life. He brings this writ of error under Rule 65—1 to review his conviction. His only contention on this writ of error is that the evidence was insufficient to sustain his conviction.

Defendant's principal argument is that the testimony of the State's principal witness, Cleveland Alexander, the complainant, was unsatisfactory, contradictory, improbable, unduly prejudicial and uncorroborated. Alexander testified that on the night of the alleged robbery he had visited a tavern, the 500 Liquor Store, located at the corner of 43rd Street and Vincennes Avenue in the city of Chicago. At the time he had about $68 in his possession, consisting of one $50 bill, several smaller bills and some change. At the tavern he had one beer himself and also bought a beer for a young woman named Arlene Williams, whom he had seen at the tavern on previous occasions but to whom he had not been introduced. He paid for one of these drinks with the $50 bill. About 10:30 p.m., Alexander left the tavern and began walking north on Vincennes Avenue on the west side of the street. He saw the defendant, Carr, cross the street and come up behind him. Carr stuck a gun in Alexander's side and removed about $60 from his right coat pocket. Carr then went back to the tavern Alexander had just left. Alexander walked to another store, told the clerk what had happened and borrowed a quarter from him. He first called his sister on the telephone, but his testimony does not disclose the purpose of this call. He then took a jitney cab to the 48th Street Police Station. There he talked with his brother-in-law, who was a detective. He apparently did not report the occurrence to the desk sergeant and did not then make a formal complaint. Alexander then decided to look for his assailant himself and call the police when he had found him, rather than send the police "on a wild goose chase." He then borrowed a quarter from his brother-in-law, told him he was going to look for the robber, and would call in to let him know.

At about two o'clock in the morning, Alexander discovered Carr and Arlene Williams sitting together at a booth in a restaurant in the vicinity of the tavern where he had previously met Miss Williams. He telephoned the police

station. Two police officers were dispatched to the scene and met Alexander in front of another restaurant in the neighborhood. Alexander then gave these policemen a description of Carr and Miss Williams, and led the policemen to where they were, whereupon the policemen arrested the pair.

The only other witness for the People was Daniel Leahy, one of the arresting officers. Leahy, a police officer attached to the 5th district at 48th and Wabash, testified that he went on duty at 12:15 a.m., and that at 2:20 a.m., he was assigned by the desk sergeant to investigate a matter pursuant to a telephone call just received from an alleged robbery victim. Leahy and a colleague drove to Usher's Restaurant, 410 East 43rd Street, where they met Alexander. Alexander told them that he had been robbed and that the man who had robbed him was in a nearby restaurant at 502 East 43rd Street. Alexander entered this restaurant ahead of the two officers and pointed out Carr as the man who had robbed him. The officers searched Carr and found $41 in his pocket but did not find any weapons. However, they found a .32 caliber Colt automatic in the pocket of the coat of Miss Williams, who was sitting next to Carr. Alexander identified this as the gun Carr had used in the holdup.

Both Carr and Miss Williams were taken to the police station for questioning. According to the testimony of officer Leahy, Miss Williams told the police officers, in the presence of Carr, that the gun had been given to her by a man named Joe, who said he had taken the gun from Carr in order to prevent his getting into trouble. Miss Williams then said that she had given the gun to Carr, and Carr admitted that he had received the gun from her. Also in Carr's presence, Miss Williams stated that Carr had possession of the gun at the time she was drinking at the tavern with Alexander. Carr himself stated that he had returned the gun to Miss Williams in the restaurant. Miss Williams also told the police in Carr's presence that Carr had had no

money prior to the time she was drinking with Alexander, but that he did have money later.

Defendant argues that Alexander's testimony is so improbable as to be completely unworthy of belief. He stresses the fact that Alexander's actions do not coincide with what would have been expected of a normal person who had just been robbed. That some of Alexander's action may be characterized as eccentric cannot be denied. This, however, does not justify us to conclude as a matter of law that his testimony was completely unworthy of belief and should be completely discounted. The trial judge, who saw and heard all the witnesses, including Alexander, was in a much better position than are we to determine their credibility and the weight to be accorded their testimony. Where there is no jury, it is primarily for the trial judge to determine the credibility of the witnesses and the weight to be accorded their testimony. (*People* v. *Lucky*, 21 Ill.2d 501; *People* v. *Cullotta*, 376 Ill. 333.) This court will not set aside a conviction which depends upon such matters unless it is necessary to prevent apparent injustice. *People* v. *Lucky*, 21 Ill.2d 501; *People* v. *Franceschini*, 20 Ill.2d 126; *People* v. *Pride*, 16 Ill.2d 82.

Moreover, the testimony of Alexander is not so completely uncorroborated as defendant's argument indicates. The testimony of officer Leahy indicated certain circumstantial evidence and implied admissions on the part of defendant which tended to implicate defendant in the crime and to corroborate Alexander's testimony. Thus there was evidence showing that defendant was broke immediately before the crime was alleged to have taken place but had some $40 when arrested shortly thereafter. Also there was evidence apart from that of Alexander indicating that defendant had possession of the gun at the time of the commission of the crime but returned it to Miss Williams later.

Defendant argues that two alibi witnesses, who were the only witnesses produced by the defense, created a reasonable

doubt as to his guilt. These two witnesses worked at another tavern in the neighborhood and they both testified that Carr and Miss Williams were in that tavern during the night the crime was committed. Without dwelling upon the details of their testimony, it is sufficient to say that they did not definitely account for Carr's presence at the crucial time in question, so that even if the trial judge accepted their testimony in its entirety, it still would not exclude the possibility of Carr's having committed the crime. Even if the testimony of these two witnesses is believed in its entirety, it does not exclude the possibility, as defendant's argument appears to assume, that he was not in that tavern at the time the crime was committed. The alibi argument of defendant assumes that both he and Miss Williams were in this other tavern the entire evening. This is refuted not only by Alexander's testimony, but by the statement of Miss Williams, in the presence of Carr, that she had been drinking with Alexander as he testified.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*