(No. 35485.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SALVATORE GUIDO, Plaintiff in Error.

*Opinion filed May 25, 1962.—Rehearing denied September 27, 1962.*

ROBERT A. DOWNING and WILLIAM P. RICHMOND, both of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and JOHN T. GALLAGHER and ELMER C. KISSANE, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Salvatore Guido, the defendant, was found guilty of the unlawful sale of narcotic drugs after a bench trial in the

criminal court of Cook County, and was sentenced to the penitentiary for a term of not less than ten nor more than twelve years. He prosecutes this writ of error for review contending that he was not proved guilty beyond a reasonable doubt.

Evidence adduced by the prosecution, almost completely through the testimony of Garrette Wimpey, a Federal narcotics agent, established that just prior to 3:00 P.M. on September 29, 1958, Wimpey and a fellow agent, Russell Olexa, drove to the vicinity of a YMCA building at 1515 W. Monroe Street in Chicago and met Sam Montana, described as a special employee of the Federal Bureau of Narcotics. Thereafter, Olexa remained in the car while Wimpey went into the lounge of the building and waited until about 3:15 P.M. when Montana returned accompanied by defendant. Montana introduced defendant to Wimpey, then withdrew to another part of the room, and the two men had a conversation wherein defendant agreed to sell Wimpey an ounce of narcotics and accepted $150 in unmarked bills for such purpose. Defendant then left the premises alone, after which Wimpey and Montana took a taxi to a restaurant where the narcotics were to be delivered. Olexa, who was advised of Wimpey's destination by a radio message from their office, followed in the government car and parked near the restaurant.

When defendant had not appeared at the restaurant after a lapse of two hours, Wimpey and Montana returned to the government vehicle and were driven by Olexa to the vicinity of a building where defendant resided in a basement apartment. Wimpey and Montana then went to the apartment and were admitted by defendant, who gave Wimpey an aluminum foil package and explained that he had been delayed in making delivery because he had difficulty finding his contact. As agreed in their prior conversation at the YMCA, Wimpey gave defendant a telephone number where he could be reached and defendant

promised to call every other day with a view to further purchases by Wimpey. The agent and the informer then rejoined Olexa in the automobile and, after taking Montana elsewhere, the two agents went to the Bureau of Narcotics. There, the foil package was found to contain a white powder which gave a positive reaction when field tested. A subsequent chemical analysis, introduced in evidence by stipulation, established that the powder was heroin.

At the trial, Agent Olexa testified and corroborated the movements of the government vehicle between the YMCA, the restaurant and defendant's apartment building. He likewise stated that Wimpey had shown him the foil package upon the latter's return to the car from the apartment building, and that he was present at the bureau when the package was found to contain a white powder which gave a positive reaction when field tested. Olexa did concede, however, that he had not seen defendant at any time on the day of the purchase. Montana did not appear as a witness and, in such regard, it was Wimpey's testimony that the informer's whereabouts were unknown.

Defendant was not arrested until January 8, 1959, at which time Wimpey and Olexa served a warrant on him while he was a patient in a hospital. According to Wimpey, he told defendant the warrant related to the sale of narcotics on September 29, 1958, after their meeting at the YMCA, and defendant said he remembered it but protested that the sale had been made to Montana. However, by defendant's version of the conversation, he denied that he had sold narcotics to anybody, stated that the agent was mistaken, and suggested that the drugs must have been purchased from Montana because he, the defendant, had not sold any upon such occasion. Olexa testified there was a conversation between Wimpey and defendant in the hospital room, but could not remember its substance.

Testifying in his own behalf, defendant, who admitted knowing Montana, denied that he had sold narcotics to

Wimpey on September 29, 1958; that Wimpey had ever been in his home; or that he had ever seen Wimpey prior to the day the warrant was served in the hospital. His wife, Greta Guido, testified that Wimpey had never been in their home and both witnesses testified defendant had been employed as a truck driver for a laundry at the time in question. Although defendant testified he was employed during the day, there was no proof that he had worked on this particular day.

In the absence of a jury, the credibility of witnesses, the weight to be given their testimony and the inferences to be drawn therefrom are for the trial judge and, upon review, we will not substitute our judgment for his unless it clearly appears there is reasonable doubt of the defendant's guilt. (*People* v. *Barney,* 15 Ill.2d 503; *People* v. *Morrison,* 23 Ill.2d 201.) A conviction will not be set aside merely because the evidence is contradictory, and a conviction depending upon the weight of the evidence will not be set aside except to prevent an apparent injustice. (*People* v. *Arnold,* 2 Ill.2d 92; *People* v. *Pride,* 16 Ill.2d 82; *People Lynumn,* 21 Ill.2d 63.) Here it was the province of the court, who was no doubt aware of the interest of the opposing witnesses in the outcome of the trial, to determine the truth of the matter between the evidence tending, on the one hand, to show defendant's guilt of the crime charged and, on the other, to establish defendant's denial of guilt and a suggestion of alibi. Upon a review of the entire record we are convinced the evidence fully supports the judgment of the trial court.

Defendant contends, however, that reasonable doubt of his guilt exists because of the circumstance that proof of his identity and of the commission of the crime rests solely upon the uncorroborated testimony of Agent Wimpey. We see no merit in this claim inasmuch as it has been repeatedly held that the testimony of a single witness, if it is positive and the witness credible, is sufficient to convict even though

it is contradicted by the accused. (*People* v. *Pride,* 16 Ill.2d 82; *People* v. *Renallo,* 410 Ill. 372.) Here, the testimony of Wimpey was positive on all material matters, was unshaken on cross-examination and was not so unreasonable or improbable as to be unworthy of belief. Moreover, to some degree at least, Olexa's testimony substantiated and corroborated Wimpey's activities on the days in question.

It is next urged that the failure of the prosecution to call Montana as a witness raises an inference that his testimony would have been unfavorable and thus creates a reasonable doubt of defendant's guilt. The prosecution, however, is not obligated to call an informer as a witness, nor does the failure to do so create a reasonable doubt of guilt. (*People* v. *Aldridge,* 19 Ill.2d 176.) It is only where there is an unexplained failure to call such a witness that an unfavorable inference may arise, (*People* v. *Strong,* 21 Ill.2d 320,) and the testimony here was that Montana's whereabouts were unknown. Cf. *People* v. *Morrison,* 23 Ill.2d 201.

Drawing principally upon cases where informers purchased narcotics with marked money and the subsequent possession of such money by an accused has been looked upon as circumstantial evidence of guilt, or as proof corroborating testimony of the informer, defendant rationalizes that the failure of the agent to use marked money in this instance "omits a vital link in the chain of circumstances necessary to prove the sale." In like manner it is urged that the failure to search Agent Wimpey for narcotics before he went out to make the purchase, in the manner done when informers are utilized, creates still another "inadequacy" in the People's proof. We think these conclusions are erroneous. Neither circumstance is a necessary element of proof of guilt as defendant's argument appears to assume. As to the latter, the fact that the agent was not searched does no more than go to the weight to be given his testimony that he purchased the narcotics in question from the defendant; as to the former, marked bills do not assume the

same evidentiary importance where the narcotics are purchased directly from an accused by a law officer nor, as here, is it unusual or unreasonable that marked bills would not be employed where the immediate arrest of the defendant was not contemplated.

Claim is also made that reasonable doubt of guilt exists because of the delay between the commission of the crime and the date of defendant's arrest. Here again, however, where the evidence shows that the agents contemplated further purchases of narcotics from defendant we cannot say that the delay in arrest was unreasonable or such as to create a doubt of defendant's guilt. Such delays, aimed at discovering narcotics suppliers at higher levels than the street peddler, are not uncommon in narcotics investigations.

It is next urged that reasonable doubt of guilt exists because the narcotics were "loosely handled" and improperly preserved as evidence. This charge is not substantiated by the record. From the testimony of Wimpey and Olexa it appears that the packet of powder was field tested at the bureau immediately after it was purchased from defendant, that it was locked in a steel container overnight, and that the following day, the package was weighed, sealed, placed in an evidence envelope and delivered by Wimpey and Olexa to the chemist whose report was stipulated in evidence.

Both defendant and his wife testified that he was employed as a truck driver for a laundry on September 29, 1958, but no proof was made that he had in fact worked that day, or that he was working during the hours to which Wimpey had testified. Apart from any question as to the credibility of the witnesses, this testimony was not sufficient to establish an alibi.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*