**People of the State of Illinois, Defendant in Error, v. Theodore Brown, Plaintiff in Error.**

**Gen. No. 49,736.**

First District, Fourth Division.

December 31, 1964.

John C. Cutler, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and William J. Martin, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant, Theodore Brown, was indicted on three counts dealing with narcotic drugs (heroin): one, for unlawful sale; two, for possession; three, for dispensing. The defendant was represented by an attorney of his own choice; waived a jury; was tried before the court and found guilty of the unlawful possession of narcotic drugs as charged in Count II of the indictment. He was sentenced to not less than two years nor more than four years in the penitentiary. A motion for new trial and motion for arrest of judgment were denied. A writ of error was brought by the defendant to the Supreme Court of Illinois and the case was transferred to this court.

From the record it appears that Brown, the defendant, had been unemployed for two years before his arrest because of a contact dermatitis and high blood pressure condition. He testified that he had last been a narcotic user in 1960. The date of the alleged sale of narcotics for which he was indicted was November 20, 1961. However, when the defendant was arrested on April 3, 1962, the federal agent who arrested him testified that he observed needle marks on Brown's arms and that Brown had admitted an eleven year old habit.

One Charles Torrence, also known as "Vannie," had been an unpaid special agent or informer for the Bureau of Narcotics for two or three months before the sale in question. Torrence [who will hereafter be referred to as "Vannie"] had been an acquaintance of Brown for about eight years. About two weeks before November 20, 1961, Vannie began asking the defendant to make a purchase of narcotics for him. Brown testified that he was approached "every other day—about seven or eight times" by Vannie, but refused because he was using no narcotics and was not interested. The day before the sale Brown was

451

called by Vannie and asked to secure narcotics for him, at which time Vannie stated he would pay $25 for the service. At that time Vannie mentioned "Brother" as a source for the drugs. Brown said he located Brother in a tavern at 55th and Indiana on November 19, 1961, and that Brother agreed to sell the narcotics.

On November 20, Vannie called the defendant and asked if he would be able to get the narcotics; the defendant said he thought he would. Vannie then told the defendant to meet him at 7:00 p. m. on November 20, at 55th Place and Indiana, Chicago, Illinois. Vannie, accompanied by the defendant, went to 55th and South Park, where they were met by U. S. Narcotics Agent, Clarence Cook, whom Vannie introduced to the defendant as an addict who wanted to make the purchase. Cook informed the defendant that he was interested in purchasing a spoon of pure heroin. Defendant replied that he could get it for $125. Cook then counted out $125 of official advanced funds and gave it to Brown who left the car, stating that he would be back in about half an hour.

The initial meeting was under constant surveillance by Federal Narcotics Agent, William Wanzeck. He saw the defendant and Vannie walk over to Cook's car and enter, and he stood across the street when Cook parked his car about 200 feet from the meeting place. At 9:15 that evening he saw the defendant walk over to the driver's side of Cook's car for a conversation. Brown testified that before this he tried to get Vannie to meet him across the street for the delivery, but Agent Cook testified that he insisted that Vannie remain in the car so as to force the defendant to deliver the narcotics to him personally.

Brother gave the defendant a tinfoil package in exchange for $125. Defendant returned to 55th and South Park, arriving there about 9:15. Agent Cook

and Vannie were seated in Cook's car. Defendant delivered the tinfoil package to Agent Cook. Vannie and defendant left together and Cook drove off.

Agent Wanzeck met Cook later and they made a field test of the contents of the tinfoil package Brown had given him. A test was later made by a U. S. government chemist, who testified that he had tested the powder in question and the result showed that the powder was "90 per cent lactose sugar and of the rest a small part was heroin hydrochloride narcotic."

The defendant testified that three days later he met Cook in a tavern at 55th and Indiana, and that Cook told him "the stuff was all right" and asked him to get some more narcotics. The defendant testified that he refused because he had not been paid the $25 on the first sale and stated that he wasn't in the business of selling narcotics.

On April 2, 1962, six or seven federal agents came to the defendant's home and arrested him. The defendant stated that they asked him to cooperate, after explaining the nature of the charges and the penalty he might receive. He stated that the agents also told him he was not the party they were actually after but that the man they really wanted to arrest was the supplier. They told the defendant that for his assistance they would not prosecute him and that he would be paid.

Federal Agent Connolly testified that he had not asked the defendant to cooperate but he did tell him that if he gave them any help it would be brought to the attention of the State's Attorney.

The court found the defendant guilty of the possession of narcotics, sentenced him to the penitentiary, and from that judgment this writ of error was sued out.

■ In this court the defendant raises the defense of entrapment, and argues that there is a reasonable

doubt as to the guilt of the accused, and asks that the judgment be reversed. Entrapment means that a defendant is led into the commission of a crime by the actions of law enforcement officials. In People v. Strong, 21 Ill2d 320, 172 NE2d 765, the court held that if it appears that officers of the law or their agents incited, induced, instigated or lured the accused into committing an offense which he otherwise would not have committed and had no intention of committing, and if the criminal design or intent to commit the offense originates in the mind of one who seeks to entrap the accused and who lures him into the commission merely for the purpose of arresting and prosecuting him, entrapment is established and no conviction may be had. [Citing 14 ILP Criminal Law, sec 50.] In the case the court stated:

"Entrapment, defined as the 'conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion or fraud of the officer,' is a valid defense. (Sorrels v. United States, 287 US 435, 77 L Ed 413.) The question then is whether the defendant was induced to perform an unlawful act or whether he was apprehended by lawful artifice in the execution of a criminal act of his own conception."

In that case the court upheld the defense of entrapment since a special employee of the government had supplied him with the narcotics 45 minutes before he delivered them to a man brought to his room by the same employee. The case is not at all similar to the case at bar.

In People v. Clark, 25 Ill2d 331, 185 NE2d 191, the initial negotiations for the sale originated with an informer and a police officer who went to defendant's

apartment and told him they wanted to make a purchase of narcotics. The court said:

> ". . . All the testimony, including that of the defendant, shows that officer Kearns and Bailey [the informer] merely told defendant they wanted to purchase narcotics and defendant agreed to sell some to them. Defendant was not induced by the police to perpetrate a crime which he would not otherwise have committed."

In Sherman v. United States, 356 US 369, at page 382 the court said:

> ". . . Of course in every case of this kind the intention that the particular crime be committed originates with the police, and without their inducement the crime would not have occurred. But it is perfectly clear from such decisions as the decoy letter cases in this Court, e. g., Grimm v. United States, 156 US 604, where the police in effect simply furnished the opportunity for the commission of the crime, that this is not enough to enable the defendant to escape conviction."

In the instant case it is worthy of note that up to the time the defendant was offered $25 to purchase narcotics he had refused to make such purchase. In People v. Hatch, 49 Ill App2d 177, 199 NE2d 81, Mr. Justice Drucker stated:

> "Although the defense of entrapment is available in Illinois, it has been stated that 'the defense in Illinois is accorded perhaps the narrowest scope of any American jurisdiction where it is recognized.' "

At the close of the case before us when the question of entrapment and the evidence to support the sale were being discussed before the trial court, the

455

court asked the defendant's attorney the following question: "On the basis of this record, if it is not entrapment, then it is a sale." The counsel answered: "That is correct, Your Honor."

■ The only evidence upon which the defendant relies to show entrapment is the fact that a considerable period of time after the sale he was told that if he would "cooperate" with the narcotics agents he would not be prosecuted and that he would be paid for his services. [This conversation in the form testified to by the defendant is denied by one of the agents.] This is not entrapment and nowhere in the law, insofar as we have been able to discover, has it been so held. The evidence was sufficient to convict the defendant of the sale of narcotics beyond a reasonable doubt. It also was sufficient to convict the defendant of the offense of possessing narcotics. The trial judge indicated that the *post hoc* inducement to the defendant to become an informer was not to the court's liking. He may have had in mind the statement of Mr. Justice Holmes in Olmstead v. United States, 277 US 438, and felt that the government agents were playing an ignoble part. In any case, he did not convict the defendant of the more serious offense for which he was indicted, but merely of the possession of narcotics. He might well have been found guilty of sale of narcotics.

■ The defendant also argues in this court that Vannie, the informer, should have been produced as a witness by the State, and in support of that argument says that while the law is that there was no obligation on the State to call the special employee or informer, the unexplained failure to do so by the State may give rise to an inference against the State. [Citing Morei v. United States, 127 F2d 827, 830; People v. Strong, 21 Ill2d 320, 325, 172 NE2d 765.] How-

ever, in any case, the absence of the informer was explained in the trial court inasmuch as Narcotics Agent Cook testified that he did not know Vannie's whereabouts and that he was no longer a special employee for the Narcotics Bureau. Where the informer is not produced as a witness and his absence is explained, a conviction will be upheld. [People v. Morrison, 23 Ill2d 201, 177 NE2d 833; People v. Guido, 25 Ill2d 204, 209, 184 NE2d 858; People v. Peyton, 25 Ill2d 392, 396, 185 NE2d 163.]

The judgment of the Criminal Court of Cook County will be affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.