**People of the State of Illinois, Plaintiff-Appellee, v. Raymond Williamson, Defendant-Appellant.**

**Gen. No. 50,894.**

First District, Third Division.

December 15, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Ronald Sandler, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a jury trial the defendant was found guilty of robbery and sentenced to serve a prison term of five to ten years. The robbery occurred in Fritz's Tavern in Bellwood, Illinois, and the sole witness testifying in the case was the bartender John Marcus. Neither the State nor the defendant presented any other witnesses. We will quote the three points made by defendant on appeal, so that the essence of his argument may be understood.

> "1. An uncorroborated and unsupported identification, even though positive in nature, which is vague and general as to specific details of identification shows an inadequate observation which warrants reversal of a conviction resting solely on that identification, it being a mere unsupported opinion of the identifying witness who did not use the opportunity presented.
>
> "2. The testimony of a solitary witness may be sufficient to establish the fact that a crime was committed, but it is not sufficient to establish the identity of the perpetrator beyond a reasonable doubt, where there is a valid question as to the accuracy of the identification.
>
> "3. In order to overcome the presumption of innocence the strength of the prosecution's case for the identification must produce an abiding conviction of guilt no matter how weak the defense."

The substance of this defense appears to be that identification is in the nature of an opinion and that testimony with respect thereto is not entitled to the same weight as testimony relating to other factual occurrences. The facts follow:

The bartender was on duty during the evening of May 3, 1964, when at about 11:00 p. m., two armed men entered the bar. One man carrying a shotgun entered the side door; the other, armed with a pistol, entered

through the front door, announcing, "This is a holdup, don't move." After a minute or two, the bandits forced Marcus and two patrons into the washroom. They later ordered Marcus to leave the washroom and to let them into another room of the tavern where the rest of the receipts were kept. Marcus remained with the robbers for about five minutes before they ordered him back to the washroom. Shortly thereafter the robbers left with about $350 in cash. Ten days after the holdup, Marcus was taken to the Criminal Court Building, where he identified the defendant Williamson and another man from a police lineup. At the trial Marcus once again identified the defendant as a participant in the robbery.

Following the direct testimony, the witness was subjected to an exhaustive cross-examination, comprising 36 pages of evidence. He testified that the two robbers entered the tavern at the same time. When asked how he knew this, he explained that he heard the side door slam just at the moment he saw the man with the pistol enter the front door. The witness's attention was drawn to the side door by the noise and when he turned in that direction, he observed the defendant holding a shotgun and watching him from a point near a telephone 15 feet away. During that time the defendant held the weapon in his left hand with the muzzle pointed toward the floor. The witness described the weapon as a single barreled, pump operated shotgun, somewhat larger than an M-1 rifle. He was familiar with an M-1 rifle from his experience in the service. With respect to the physical appearance of the robber, the witness stated that the man was slender, 5 feet 11 inches to 6 feet tall, and light complexioned. He was asked a number of times on cross-examination to estimate the weight of the robber, but explained that the robber was wearing a brown leather jacket which covered his body midway to the knees and that under those circumstances he could not accurately estimate the man's weight in pounds. He testified that in

addition to the jacket the robber was wearing a hat with a medium sized brim and sunglasses with thick black rims.

Defense counsel asked numerous questions about the lineup in which the witness identified the defendant and about the police procedures associated with it. The witness was asked to describe the clothing of the members of the lineup panel, particularly that of the defendant, to which the witness replied, "Is it necessary that I answer that question?" The court directed him to do so, and he answered by saying that he did not remember. The cross-examiner then inquired as to defendant's weight at the time of the lineup.

"Q. How much did he weigh at this time, sir?
"A. I don't know, I told you that before. I don't know, and I still don't know."

 . . . . . .

"Q. But do you have an idea to help this jury out, as to how much this man weighed?
"A. No, I don't, I can't judge a man, how much he weighs with a coat on or a jacket, I cannot judge it."

Counsel for defendant argues that this reveals that the witness's testimony is not credible. We cannot agree. The witness was thoroughly cross-examined in regard to both the weight of the robber and the description of his clothing. The responses before set out came at the conclusion of a long cross-examination, and the jury and court could well have viewed them as the testimony of an honest but weary witness. It is our conclusion that the witness gave a conscientious and credible description of the event and that his identification of the robber was convincing.

The testimony of one witness may be sufficient to support a conviction even though the accused testified

and denied complicity in the crime. People v. Tunstall, 17 Ill2d 160, 161 NE2d 300; People v. Mack, 25 Ill2d 416, 185 NE2d 154; People v. Webb, 76 Ill App2d 333, 222 NE2d 190. As the court said in People v. Tunstall, supra, at 164:

> "The testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused."

The witness in this case positively identified the defendant and did not qualify his testimony throughout his long cross-examination.

█ Defendant contends that identification testimony is in the nature of an opinion or conclusion and that therefore it should be corroborated or should be in sufficient detail so as to distinguish the defendant from other possible suspects. In his brief he submits that the members of this court could look out on any busy street and observe many men who would fit the description given by the witness. This argument confuses the issue. The witness saw the robber and identified the defendant. The observation is the basis of his identification, and the specific characteristics contained in the testimony do not embrace the totality of the visual observation. Witnesses cannot be expected to testify to all the details which form the basis of their identification, but this does not make their testimony a conclusion or opinion in any legal sense. It is still testimony based on observation. Witnesses may be impeded by a limited vocabulary from articulating their recollection of an event, but this does not mean that they are unable to recognize and point out an individual in a courtroom.

The testimony of the witness in the instant case was uncontradicted and unequivocal. He had ample opportunity to observe the robbers from a distance of only 15

feet, and he positively identified them from a lineup, from police photographs, and again in open court.

 Defendant argues that the State should have called as witnesses the man and wife who were in the tavern when the holdup occurred and that in view of the failure to call those witnesses, we should infer that their testimony would have contradicted the testimony of Marcus. When a case turns upon a disputed issue of fact which an available witness could resolve from his unique knowledge of the event and the State chooses not to call that witness to testify, then the trier of fact may infer that the testimony would have been unfavorable to the State. People v. Strong, 21 Ill2d 320, 172 NE2d 765; People v. DiVito, 66 Ill App2d 282, 214 NE2d 320; Morei v. United States, 127 F2d 827 (6th Cir); Cf. People v. Guido, 25 Ill2d 204, 184 NE2d 858; People v. Morrison, 23 Ill2d 201, 177 NE2d 833. The instant case may be distinguished from these authorities. Four of the cases hereinbefore cited involved controlled purchases of narcotics arranged through the cooperation of informers paid by the State and in those cases the informers could have refuted the testimony for the defense.

People v. DiVito, supra, cited by defendant, involved a different factual situation. In that case the accused was linked with a robbery only by the presence of his thumbprint at the scene of the crime. *He was not identified by any witness.* The defendant explained the thumbprint by stating that he had been a guest in the apartment prior to the robbery; that the complainant offered to assist him in a tax matter; that he left the apartment after the complainant made immoral advances to him. At the close of the defendant's testimony the prosecutor said, "All right, judge, if I could have about three minutes I will have some rebuttal." The court declared the recess, but the State did not come forward with the rebuttal, even though the complaining witness

96

was the only person who could refute the defendant's testimony.

 The implicit first premise for the negative inference against the State is that the available witness must have such knowledge of the disputed event as to demand an explanation for his absence. In the instant case the two patrons of the tavern were in no better position to identify the defendant than was the bartender. The witness's testimony was neither impeached nor discredited, and there is no suggestion of any motive on the part of the State to suppress evidence relating to the identification of the defendant.

It is only realistic to observe that many citizens are reluctant to testify in court, particularly in criminal cases. It is time consuming and often frightening for the ordinary man or woman. It may entail absence from work and the attendant loss of wages, and it also entails the disagreeable experience of cross-examination as often depicted in television and motion pictures. Few people are immune from such apprehension. It is related of David Garrick, the famous actor, that when called as a witness in a civil case involving nothing more than the nature of a free benefit, his testimony was so incoherent as not to be understood.

There is some testimony, elicited by defendant's attorney, which reveals that the other witnesses had this apprehension. Marcus testified that on one occasion he was taken to the police station to view photographs of the defendant. The cross-examiner then asked:

> "Q. Now, this was after you supposedly identified Ray Williamson, isn't that right?
> "A. And he wanted to show the pictures to the other couple *that didn't want to appear in the court room.*" (Emphasis ours.)

97

There was ample evidence in the record to support the finding of guilty, and the judgment is accordingly affirmed.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.