**People of the State of Illinois, Appellee, v. Dennis Cardenas, Appellant.**

Gen. Nos. 52,312, 52,313.

First District, First Division.

July 22, 1968.

Rehearing denied September 17, 1968.

Howard T. Savage and William P. Gerber, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Truschke, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is a consolidated appeal from two separate convictions. In case number 52,313 the defendant, Dennis Cardenas, was charged with having committed the crime of forcible rape on December 2, 1965. In case number 52,312 he was charged with having committed the crime of attempt rape on December 20, 1965.

We first address ourselves to case number 52,313. This case was called to trial on December 27, 1966. The defendant pleaded not guilty, and signed a jury waiver. After a trial, the trial judge found him guilty of rape as charged in the indictment. On the morning of January 20, 1967, judgment was entered on the finding of guilty. At this time the defendant's motions for a new trial, in arrest of judgment, and for probation were denied, and the court sentenced him to the State Penitentiary for a term of not less than two and not more than ten years.

In number 52,313 the defendant contends, on appeal, that his identification by the prosecutrix as the party who had raped her was so unsatisfactory that his guilt was not established beyond a reasonable doubt, and therefore, his conviction on the rape charge should be reversed.

Janice June Pettigrew, the prosecutrix, testified that on December 2, 1965, she sent four of her children off to school. Then, at about 8:30 in the morning, she climbed back into bed with her two-year-old baby beside her. She fell asleep immediately. Shortly thereafter, between 8:30 a. m. and 9:00 a. m., the prosecutrix was awakened by a man placing his hand on her leg. Upon awakening, the prosecutrix discovered a man wearing a navy blue stocking cap standing by the side of her bed. She further testified that this man was the defendant. He immediately covered her face with a pajama top and climbed on to the bed, placing himself on top of the prosecutrix. During the ensuing struggle, Mrs. Pettigrew managed to pull the pajama top off her face, and she looked at the de-

fendant for about two minutes. The defendant then struck her in the face. According to the prosecutrix, the defendant called out, "Dave, I'm having trouble," and he told her that if she didn't cooperate "Dave" would kill her baby. At this point Mrs. Pettigrew stopped struggling and allowed the defendant to have sexual intercourse with her. After the defendant had finished, the prosecutrix removed the pajama top from her face and observed him for another minute and a half before he left.

Mrs Pettigrew testified that light was coming into the bedroom from a window which was located above the foot of the bed; the shade had been drawn on the window, but it didn't cover the window completely. At the time of the incident it was daylight outside, and light was also coming into the bedroom from the windows in the living room.

The prosecutrix further testified that she went to the police station three times following the incident to view suspects. On two occasions there were lineups and on one visit the police showed her a single suspect. During these visits to the police station Mrs. Pettigrew was shown seven suspects, and she failed to identify any of them as being the man who had raped her. Subsequently, on December 20, 1965, at around 5:30 in the morning, a police officer arrived at Mrs. Pettigrew's apartment and asked her if she would like to view a suspect. She said that she would; whereupon the defendant was brought into her apartment, and she immediately identified him as the man who had raped her.

Police Officer George Carlson testified that he received a radio call on his police car radio shortly after nine o'clock a. m. on December 2, 1965, directing him to proceed to the apartment of the prosecutrix. After he arrived, Mrs. Pettigrew identified her assailant as being a white man, about twenty-five years of age, wearing a brown suede jacket and a blue stocking cap.

449

Police Sergeant John Mahoney testified that he arrested the defendant during the early morning hours of December 20, 1965. He further testified that the defendant, at the time of his arrest, was wearing "a navy watch-type knit cap . . . it was navy blue."

The defendant took the stand and denied that he had raped the prosecutrix. He stated that at the time of the incident in question he was at home. He further testified that when the police arrested him on December 20th, they told him that they knew he was the man they were after because Mrs. Pettigrew had been raped by a man with a scar on his face. He testified that although he owned a navy blue stocking cap he didn't believe he was wearing it at the time he was arrested.

The defendant's wife testified that on the morning of December 2, 1965, the defendant was at home asleep at the time during which the rape took place. She further testified that her husband wore a navy blue stocking cap until November of 1965 when she threw it away, and that he never purchased another one.

The defendant contends that the foregoing evidence did not contain facts sufficiently probative of his identity as the party who raped the prosecutrix to establish his guilt of the offense charged beyond a reasonable doubt. In support of his contention he argues: (1) that the light in the room where the rape took place was inadequate for the prosecutrix to properly identify her assailant; (2) that the prosecutrix failed to mention to the police in identifying her attacker the presence of a facial scar which the defendant had at the time of the occurrence; (3) that he had a reasonable alibi; and (4) that his identification was substantially weakened due to the fact that the prosecutrix did not pick him out of a lineup held at a police station.

■■ The identification of an accused as the perpetrator of a particular crime will be sustained on appeal on the basis of a positive identification made by a single

450

credible witness. People v. Guido, 25 Ill2d 204, 184 NE2d 585. Questions as to the credibility and weight of testimony and the inference to be drawn therefrom by the trier of fact are, in a case tried without a jury, best left for resolution to the trial judge, and we will not substitute our judgment for his determinations in this regard unless it appears from the record that there is clearly a reasonable doubt as to the defendant's guilt. People v. Morrison, 23 Ill2d 201, 177 NE2d 833.

██ ██ The prosecutrix positively identified the defendant as the man who had raped her when he was brought to her apartment, and again at the trial. Her testimony, if believed by the trial judge, was sufficient to identify defendant as her assailant beyond a reasonable doubt. She testified that although the shade on the window in the bedroom was drawn, light was coming into the room from where the shade didn't cover the window. She further testified that at the time of the rape it was daylight outside and light was also coming into the bedroom from the windows located in the living room. She stated that she had three separate opportunities to observe the defendant when he was in close proximity to her. On the basis of her testimony the trial judge was justified in concluding that the prosecutrix was able to properly identify her attacker. Furthermore, we point out in this regard that the description of her attacker given by the prosecutrix to the police shortly after the incident, in which she stated that the rapist was wearing a navy blue stocking cap, was corroborated by the testimony of one of the arresting officers who stated that the defendant, at the time of his arrest, was wearing the type of cap mentioned by Mrs. Pettigrew.

██ The trial judge was not required to believe the alibi testimony offered in behalf of the defendant. People v. Setzke, 22 Ill2d 582, 177 NE2d 168. The credibility and weight of identification evidence is not destroyed by

the failures either to mention specific physical characteristics of the defendant or to pick him out of a lineup. People v. Calloway, 74 Ill App2d 418, 221 NE2d 73; People v. Crenshaw, 15 Ill2d 458, 155 NE2d 599. As we have already pointed out the defendant was positively identified by the prosecutrix both in and out of court. Any questions as to the weight and credibility of her testimony were for the trial judge to resolve. We conclude, therefore, that in cause number 52,313 the defendant was proven guilty beyond a reasonable doubt.

We next turn our attention to cause number 52,312 in which the defendant was charged with the crime of attempt rape, a crime allegedly committed at a different time and place and involving a different victim than the offense charged in 52,313. The attempt rape charge came up for trial on the afternoon of January 20, 1967, before the same judge who had presided over the rape trial, and who had sentenced the defendant in the latter cause that morning. The defendant withdrew his previously entered plea of not guilty and pleaded guilty to the charge of attempt rape. The trial judge sentenced the defendant to a term of not less than two and not more than ten years in the penitentiary, the sentence to run concurrently with the sentence imposed in the rape conviction.

The record reveals that at the time sentence was imposed in the rape case the trial judge did not inform the defendant of his right to appeal and of his right, if indigent, to be furnished with a transcript of the proceedings free of cost and with an attorney on appeal as provided for by Supreme Court Rule 605. (Ill Rev Stats 1967, c 110A, § 605.) The defendant appeals from the judgment entered in number 52,312, contending that this failure of the trial judge to comply with Supreme Court Rule 605 in effect coerced him into entering a plea of guilty. He supports this contention on the

theory that he would not have pleaded guilty to the charge of attempt rape except for the fact that (since he was indigent) the failure of the trial judge to inform him of his right to appeal in forma pauperis from the rape conviction led him to believe that the latter judgment could not be appealed from, thereby inducing a belief that it would be useless to contest the attempt rape charge.

▆▆▆ The defendant concedes that the failure of the trial judge to inform him of his right to appeal in forma pauperis did not hinder in any way his prosecution of an appeal from the rape conviction, and indeed, he has been represented on appeal by private attorneys of his own choice and the same attorneys filed their additional appearance in the trial court after the defendant was sentenced. Furthermore, it appears from the record that defendant's attorney at trial discussed with the defendant the costs of an appeal from the rape conviction prior to the imposition of sentence in the attempt rape cause. In any event, any misapprehension the defendant may have had as to his right to appeal from the rape judgment was cured by the trial judge when he informed the defendant of his right to appeal in forma pauperis from that judgment immediately after imposing sentence on the attempt rape charge. The defendant, at no time called to the trial judge's attention the fact, if such was the case, that his plea of guilty had been induced by a mistake of law on his part. The defendant did not ask the trial judge to vacate his plea of guilty nor did he seek to withdraw said plea for any reason; he has raised the issue of the involuntariness of his plea for the first time on appeal. The trial judge should have been given an opportunity to determine whether to allow the withdrawal of the guilty plea. "A claim of error based on the fact that a plea of guilty was not voluntarily and understandingly made will not be considered on appeal

where no objection was raised in the trial court." 24 CJS, Criminal Law, § 1673(3).

The judgments and convictions of the defendant are, therefore, affirmed.

Judgments affirmed.

ADESKO and MURPHY, JJ., concur.