**People of the State of Illinois, Plaintiff-Appellee, v. Fred Adams (Impleaded), Defendant-Appellant.**

**Gen. No. 51,996.**

First District, Second Division.

March 11, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, and Robert B. Rosen, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

A four-count indictment was returned against the defendant, Fred Adams. Count I charged him with armed robbery, Count II with robbery, Count III with the of-

fense of theft, and Count IV with the crime of criminal trespass to a vehicle. The defendant was found guilty on all four counts of the indictment and sentenced to a term of not less than two years nor more than two years and one day in the penitentiary. On appeal defendant contends that he was not proved guilty beyond a reasonable doubt, on the following grounds: 1) the identification of defendant by the prosecuting witness was vague and uncertain; and 2) defendant tendered evidence to establish an alibi.

Esco Elmore, the complaining witness, testified that on August 21, 1966, while driving north on Pulaski Road at about 2:00 a. m., he stopped for a traffic light at Jackson and Pulaski. A man opened the door on the right side and got into the car, while a second man pushed Elmore to the center and took the driver's seat. The witness described the first man as wearing a red sweater shirt, checkered sport jacket, and dark grey hat; he stated that the man wore a thin mustache and carried a knife. The man in the driver's seat wore a white shirt and had a scarf on his head. The first man took the witness's wallet and some papers, and when the witness asked them to let him go, the man said, "Shut up. I will kill you." The witness was let out of the car in an open prairie near Karlov Avenue and 19th Street, and he then walked to a service station where the attendant telephoned for the police, and the witness reported the incident. He testified that he had a concussion and a bruised hip after being shoved from the car.

The following morning Elmore called his nephew, Frank Elmore, and told him of the incident; the two men, together with a friend, Richard Williams, went out to look for the car which they found in a vacant lot at 1403 South Karlov. Elmore then called the police, and while he was making the call, Frank and Richard saw two men walk down the alley and start to get

157

into Elmore's car. They ran and overpowered the two men, holding them until the police arrived with Elmore in their car. Elmore recognized the two men as his assailants of the previous evening, and they were wearing the clothing he had described.

The complaining witness testified on cross-examination that when the two men accosted him in his car he did not see the man in the red shirt standing at his height, but saw him leaning over; that he had a good look at the man on his right (allegedly the defendant) when a light from a passing police car lit up the area. The witness admitted he was frightened at the time, and on redirect examination, stated there was a dome light in the car which increased his visibility when the door opened as he was being pulled from the car. He also stated that there were street lights and lights from a gas station which permitted him to see the profile of the defendant.

Three people testified for the defense: Arthur Matthews, Jeanette Thompson, and the defendant himself. Matthews stated that he worked as a bartender at 4106 West 16th Street from 4:00 p. m. to 3:00 a. m.; that on August 21, 1966, the defendant (his cousin) came into the bar about midnight, went next door to a restaurant about 12:30, and returned to the bar about 1:00 a. m., where he stayed until 2:45, when the witness told him he was closing. The witness went into the restaurant next door at about 3:45 a. m., where he joined the defendant and a friend, Jeanette Thompson, until about ten minutes of four, at which time he left to go home. On cross-examination the witness stated that he presumed the defendant went to the restaurant when he left the bar; that he could not say exactly where defendant went while he was away from the bar; that he did not remember what the defendant was wearing, nor did he know if he had a red shirt.

Jeanette Thompson testified that she worked in the restaurant next to the tavern where Matthews worked; that on the night in question the defendant was in and out of the restaurant about four times; that he visited with her and another girl when they were not busy, then went into the tavern to visit with his cousin, later returning to the restaurant. She stated that she saw the defendant turn toward the tavern, but did not actually see him open the door. She testified that she did not recall what clothing defendant was wearing, nor did she remember whether he had a mustache or wore a hat.

The defendant testified that on the night in question he had been in the bar where his cousin worked; that he left two or three times to visit the restaurant next door; that between 2:00 and 3:00 a. m., he was either in the tavern or the restaurant. He stated that he did not remember what clothes he was wearing that night, but he knew they were not the clothes he was wearing when he was arrested. He testified that after leaving the restaurant about 4:00 a. m., he went to a girl friend's house where he remained until about 11:30 the next morning, at which time he went home, bathed and put on the red shirt which he was wearing at the time of his arrest. He stated that he then met Willie Williams at a tavern at 15th and Pulaski; they went to a poolhall next door where a man named Lefty gave Williams the key to a car, and the defendant went with Williams to the car. Williams had started the engine, and the defendant was getting into the car when he was struck by a man with a blackjack; the police arrived and the defendant and Williams were arrested. The defendant stated he did not know the car was stolen; that he did not have a weapon; and that he did not rob the complaining witness. Codefendant Willie Williams pleaded guilty and was found guilty of a misdemeanor.

■■ The defendant contends that the only question before the court is whether he was proved guilty beyond a reasonable doubt, and the grounds alleged by defendant are that the identification by the prosecuting witness was vague and uncertain, and that the defendant tendered evidence to establish an alibi. It is well-settled law that the credibility of the witnesses is a matter for the trier of the fact, and that applies both to the identification of the defendant and to the alibi presented by him. In People v. McCormick, 92 Ill App2d 6, 235 NE2d 832, at page 14, the court points out that a court of review must examine the evidence in every criminal case but the judgment of the trial court will not be overturned unless the evidence is so unsatisfactory as to justify a reasonable doubt of the defendant's guilt.

■ In the case before us the prosecuting witness had full opportunity to see and observe the defendant under adequate lighting conditions. He testified that he remembered the face of the defendant. This appears in the record, but was inadvertently omitted from the abstract. He testified in detail as to the dress of the defendant, and his evidence was consistent. It is true that he did say he was frightened, but that does not detract from the sufficiency of the identification. The court in People v. Cox, 22 Ill2d 534, 177 NE2d 211, at 539, holds that "the testimony of one witness alone, if it is positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused." Also see People v. Donald, 29 Ill2d 283, 194 NE2d 227.

In the instant case the defendant put on two alibi witnesses: one was Arthur Matthews, his cousin, his landlord, and apparently his close friend; another was Jeanette Thompson, who was described as a girl with whom the defendant "played all the time." The testimony of those witnesses is not positive, and even if it were given full credibility it would not have shown that

the defendant was not out of their observation at the time the alleged crime was committed.

The companion of the defendant during the alleged robbery was Willie Williams, who pleaded guilty to the offense. According to the record, the defendant testified that Williams and another fellow committed the robbery and told the defendant about it the next day. This statement, too, does not appear in the abstract.

The defendant's story about meeting Williams at a tavern, and the car keys being given to Williams by a man known as "Lefty" is utterly improbable and unworthy of belief. The evidence is uncontradicted that the defendant went to the stolen car and was overpowered by the complaining witness's nephew and Richard Williams, who held the defendant until the police arrived. The complaining witness testified that he recognized the two men as his assailants of the previous evening, and that they were wearing the same clothing he had previously described.

As we have pointed out, even if the trier of the fact believed the testimony of the alibi witnesses, their testimony is consistent with the guilt of the defendant, and in People v. Carr, 22 Ill2d 619, 177 NE2d 107, it was so held. The defendant's denial of the crime was a matter for the credibility of the trier of the fact. People v. Guido, 25 Ill2d 204, 184 NE2d 858.

In the instant case it is apparent that the trier of the fact did not believe the defendant's testimony, nor did he feel that the testimony of defense witnesses was sufficient to establish an alibi. Upon a careful examination of the evidence in the record it is evident that the defendant was convicted of the crime charged beyond a reasonable doubt. The judgment of the Circuit Court is affirmed.

Affirmed.

LYONS, P. J., and BURKE, J., concur.