THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EDMOND CLEMONS, Defendant-Appellant.

First District (4th Division)    No. 76-2

Opinion filed November 17, 1976.

Arthur J. O'Donnell, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Myra J. Brown, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

Defendant, Edmond Clemons, was convicted of rape and aggravated kidnapping, following a bench trial. He was sentenced to a term of 10 to 20 years in the State penitentiary. From this conviction, defendant appeals.

The issue presented for review is whether the defendant was proven to be the perpetrator of the crimes charged beyond a reasonable doubt.

On December 8, 1974, the prosecutrix, Mrs. Patsy Robinson, went to a tavern known as the Trendsetter's Lounge located at 33 East 111th Street, arriving there some time between 9 and 9:30 p.m. She drove there in her own car, visited with friends and left the Lounge between 12 and 12:30 a.m. on December 9, 1974.

Mrs. Robinson got into her car, drove east for 11 or 12 blocks and then remembered that she had forgotten her newspaper; so she turned around and went back to the Trendsetter's Lounge. She parked her car directly across from the Lounge, leaving the car unlocked and the motor running. She went into the Lounge, picked up her newspaper, went back to the car and again proceeded eastbound toward the Calumet Expressway. As she entered the Calumet Expressway, a man came up from the back seat and told her to keep driving; that he had to get out of the neighborhood. She

proceeded to the Stony Island exit, at which time the man told her to turn. She was able to see him by glancing back and looking through the rearview mirror. She identified the defendant as her assailant.

After proceeding to Woodlawn Avenue, the assailant told her to turn left. At this time she noticed he was armed with a gun. After turning left on Woodlawn Avenue he told her to stop and move over, and he climbed into the front seat of the car. He drove around the block completely and returned to the area between 95th and 96th on Woodlawn Avenue. After circling the block, he told her to take off her clothes, which she did. He then told her to get in the back seat of the car and lay down. He then crawled over and into the back seat, unzipped his pants, and had sexual intercourse with her. The sexual act of intercourse took about 4 or 5 minutes.

The assailant then climbed back into the front seat and handed Mrs. Robinson her coat. He told her to put it on and climb back into the front seat, which she did. Her assailant then drove back to 110th Place and State Street, where he stopped the car, got out and proceeded walking east on 110th Place. Mrs. Robinson proceeded north on State Street to 103rd Street where she pulled over to the curb and parked. She saw a police car, blinked her lights, and the police officers stopped. She advised them that she had been raped.

Officer Lawrence Alonso of the Chicago Police Department testified that at 1:10 a.m. on the morning of December 9, 1974, he was driving with his partner, in a squad car, northbound on State Street at approximately 103rd Street. There was a car parked at the curb, occupied by a female. As the officers drove by, they observed her hair was messed and she was crying. They proceeded a short distance to the intersection of 103rd, made a U-turn, came back south on State Street, at which time the lady in the car flashed her headlights a few times. They pulled directly opposite her car, walked over, and asked her what was wrong. She told them she had been raped. Her hair was messed and she was crying, trembling, and spoke haltingly. She got out of her car, walked over to the squad car and said that she didn't have any clothes on underneath her coat. Officer Alonso went back to her car and retrieved her clothing. She was taken to the Roseland Hospital where she was examined. A swab taken from her vaginal area indicated the presence of semen. At the hospital she was contacted by other officers and gave them a description of her assailant as a man 5'9" to 5'10" tall, about 150 or 160 lbs., 23 to 28 years of age, and dark skinned. She described him as wearing a blue cap, a dark blue jacket, wrist length, and having on dark pants.

On Tuesday, December 10, 1974, at approximately 7:15 p.m., Mrs. Robinson went in Gately's Store, which is located at 112th and Michigan. She was in the company of Gloria Rhodes and Marilyn Brown. As the

three women were leaving the store, a man came into the store and had a brief conversation with Gloria Rhodes; after which the three women proceeded out of the store. At that time Mrs. Robinson indicated the man was the rapist. The three women then flagged down a police car and had a conversation with the officers. The police went back into the Gately Store with the women, where they observed the defendant, Edmond Clemons, walking directly towards them. The defendant was placed under arrest.

Mrs. Robinson testified she did see a mustache on her assailant the night of the incident, but did not remember telling the police that her assailant had a mustache at the time she was giving them a description of him. Later, she testified she did tell the officers of the assailant's mustache. On cross-examination Mrs. Robinson testified she had never seen Clemons prior to the original incident.

Cynthia Newsome, the defendant's girlfriend, testified the defendant was home at 10613 Edbrooke Avenue when she arrived home from work at 10:30 to 11 p.m. on Sunday, December 8, 1974, and she was present with him in the bedroom until after 1 a.m. on December 9. She also testified that on December 8, 9, and 10, 1974, the defendant had a mustache. She identified a photograph of the defendant taken in the County Jail which showed a slight mustache and a small goatee.

Edmond Clemons testified he lived with Cynthia Newsome at the Edbrooke address. On December 8, 1974, he had a mustache. He denied ever going to the Trendsetter's Lounge on December 8, and he testified on the evening in question he went to a movie at the Roseland Theater with a friend and arrived home at approximately 9:30 or 10 p.m. He prepared himself something to eat and at 10:30 to 11 p.m., Cynthia Newsome came home. Together they remained in the bedroom and watched television until approximately 1 a.m. He further testified he was 5'9" tall, and in December of 1974 he weighed about 165 lbs., was dark complected and 28 years of age. He denied ever seeing Patsy Robinson before December 10, 1974.

A stipulation was entered into that if Officer Ganzer of the Chicago Police Department was called to testify, he would testify that shortly after the incident he interviewed Patsy Robinson at the scene. He received a detailed description from her of her assailant, and as a result of that description he prepared a report which was signed by him, together with his partner, and that said description did not include either a mustache or a goatee.

Defendant was convicted and sentenced to the Illinois State Penitentiary for a term of 10 to 20 years.

■■ The law in Illinois is well settled that the testimony of a prosecutrix alone is sufficient to support a conviction for rape where the

testimony is found to be clear and convincing. (*People v. Reaves* (1962), 24 Ill. 2d 380, 183 N.E.2d 169.) Where the evidence of rape is something less than clear and convincing, the testimony of the prosecutrix must be corroborated by other evidence, such as complaint by the prosecutrix at the first opportunity after the occurrence. See *People v. Scott* (1950), 407 Ill. 301, 95 N.E.2d 315.

At the time of the occurrence the prosecutrix had an ample opportunity to observe her assailant. They drove on well-lighted city streets and expressways for about 45 minutes. Just after the occurrence the prosecutrix flagged down a passing squadrol at the first opportunity. Her in-court identification of the defendant as her assailant was positive and unwavering.

The defendant raised an alibi defense at trial and questioned the credibility of the prosecutrix by pointing out an inconsistency in her testimony. At first she could not remember telling the police of the defendant's slight mustache, while later she testified she did remember telling the officers of the mustache. This alleged discrepancy, standing alone, does not render Mrs. Robinson's testimony less than clear and convincing.

In the absence of a jury, the credibility of witnesses, the weight to be given their testimony and the inferences to be drawn therefrom are for the trial judge and, upon review, courts of review will not substitute their judgment for his unless it clearly appears there is reasonable doubt of the defendant's guilt. See *People v. Guido* (1962), 25 Ill. 2d 204, 184 N.E.2d 858.

■■ Here, it was the province of the trial court, who was no doubt aware of the interests of the opposing witnesses in the outcome of the trial, to determine the truth of the matter.

Upon review of the entire record we are convinced the evidence fully supports the judgment of the trial court.

For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Affirmed.

JOHNSON, P. J., and SULLIVAN, J., concur.