THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNY BROOKS *et al.*, Defendants-Appellants.

(No. 72-309; ▮▮▮▮▮▮▮▮

Second District—September 17, 1973.

Ralph Ruebner, Deputy Defender, of Elgin, (Richard J. Wilson, Assistant Appellate Defender, of counsel,) for appellants.

William J. Scott, Attorney General, of Chicago, and Dexter A. Knowlton, State's Attorney, of Freeport, (James B. Zagel and Charles H. Levad, Assistant Attorneys General, of counsel,) for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

A jury's verdict found the defendants guilty of armed robbery and they were sentenced to serve from 5-15 years in the penitentiary.

On March 13, 1970, at approximately 8:20 A.M., a Mrs. Roth of Freeport, Illinois, looking from her window, observed a brown and black two-door car (Cadillac) drive up and park across the street. She noticed that the motor was kept running and that the car was occupied by two black men. A dirty white two-door sedan (Ford), also containing two black men, pulled up behind the Cadillac and parked with the motor running. Five minutes later, a four-door silver car arrived, occupied by two black men; it parked in front of the other two vehicles. At 8:35 or 8:40, one passenger from the Ford and one from the Cadillac entered the silver car and drove off while the Ford and Cadillac remained, each occupied by one person.

At 8:47 A.M., the Freeport police received a call relating to the remaining parked cars observed by Mrs. Roth. Two policemen arrived at 8:50; one radioed in a description of the vehicles and their license numbers while his partner questioned the occupants. The man in the Ford stated that his name was Payne, that he had been waiting for someone, but that he was leaving. The occupant of the Cadillac gave his name as Patterson, said that he had been talking to the man in the Ford and that he, also, was just leaving. Both cars were gone by 9 A.M. Leaving the scene, the officers started toward the downtown area; enroute, they observed the Ford heading in the direction from which they had just come.

Elvin Neebel testified that he was a clerk in a Freeport liquor store; that on March 13, 1970 he opened the store at 8:45 A.M.; that shortly thereafter a tall black man entered, followed a few minutes later by a shorter black man; that both men pulled guns and announced a hold-up; that the men took money from the cash register, safe and from his wallet and placed it in a store wastebasket; that the taller robber took his watch; that they ordered him and a Mrs. Rideout, who had entered the store during the robbery, into a restroom, then fled; that after a few minutes he left the restroom and called the police.

Mrs. Rideout testified that prior to entering the store she noticed a car parked in the lot with a Negro in the driver's seat.

The Freeport police radio broadcasted that an armed robbery had occurred; that three male Negroes had been involved; that one was tall and slim and another short and stocky. Neither the third participant nor the vehicle was described.

At 9:11 A.M., Trooper Belcher of the Illinois State police heard the

broadcast and positioned his squad car 100 feet off Route 20 on an elevated side road 17 miles east of Freeport. Belcher testified that he was watching for the robbery suspects when, at 9:30, he noticed a white 1966 Ford travelling east from the direction of Freeport; that the car was exceeding the speed limit and contained two black men in the front seat and from his elevated position saw one black man reclining across the back seat; that as he prepared to pursue the vehicle it pulled into a gas station; that he positioned his squad car in front of the vehicle, and a sheriff's car which Belcher had signalled, parked behind it; that he asked for the driver's license and was handed a license bearing the name of Francis Payne; that the description on the license did not match the driver's physical characteristics; that the driver then admitted his name was Knowden and that the front seat passenger was Payne; the man in the back seat was identified as the defendant, Johnny Brooks. All three men were removed from the auto, searched and placed in a sheriff's car while Belcher ran a check on Payne's license.

At 9:58, two police officers brought Elvin Neebel to the gas station where he identified defendant Brooks as the shorter man who had robbed him, and stated that Payne looked like the taller man. The three men were then arrested for armed robbery.

The car stopped by Belcher proved to be the same white car that had earlier been parked with the Cadillac and investigated by the police. The Cadillac was registered to Francis Payne in Robbins, Illinois but Payne denied that his car had been in Freeport that day. The Freeport police put out an all-points bulletin describing the car and notified the Robbins police to pick up the car and hold its driver on suspicion of armed robbery. At 6:30 P.M. the Robbins police found the car; McKnight was driving. He was arrested, searched and taken to the Robbins police station where he was again searched. During the second search, his personal property was taken which property included the watch which had been taken from Neebel during the robbery. The watch was introduced and identified at the trial.

A cash register receipt from the liquor store (found in the back of the Cadillac) and the wastebasket taken from the store (found on the Route 20 bypass) were admitted into evidence. At the trial Neebel identified Brooks and McKnight as the men who had robbed him.

Both defendants raise four major issues: (1) the court erred in denying the defendants' motion to suppress physical evidence and lineup identifications obtained as a result of their illegal arrest; (2) the evidence presented by the State was insufficient to prove defendants' guilt beyond a reasonable doubt; (3) appointed counsel performed in a manner. which denied defendants a fair trial; and (4) the court abused its

discretion when it refused the defendants' applications for probation because of their request for a jury trial.

■■ Defendants allege that they were arrested illegally in that no probable cause existed. Arrest by a police officer without a warrant is proper if the officer has reasonable grounds to believe that such person has committed a crime. (Ill. Rev. Stat. 1969, ch. 38, sec. 107—2(c).) This belief may be founded on hearsay evidence and on factual and practical considerations of everyday life upon which reasonable, prudent men, not legal technicians, operate. The question of whether probable cause exists depends on the facts of each individual case. See *People v. Colbert*, 10 Ill.App.3d 758, 760 (1973), and cases cited therein.

■■ As regards Brooks' arrest, Trooper Belcher received information that an armed robbery had been committed by three black men. He then observed three black men in a speeding auto travelling from the direction of the robbery. This observation was made within one half hour of and approximately seventeen miles from the scene of the crime. At this point in time Belcher had probable cause to stop the vehicle for speeding if not in fact for the armed robbery. Before actual pursuit could begin the car pulled into the gas station. Although two police cars prevented the car from moving, this fact alone does not indicate that defendant Brooks, a back seat passenger, was under arrest. Belcher testified that he then noticed that the height and weight of the two men in front matched the descripion of the two robbers. He thereupon learned that the driver did not have a valid driver's license. It was at this point, when Brooks was searched and told to wait in the Sheriff's car, that his arrest occurred. Based upon the totality of facts known to Belcher at the time of Brooks' arrest, there was probable cause to believe that all three men had participated in the armed robbery. It was therefore proper for the trial judge to deny defendant's motion to suppress identification testimony resulting from the arrest. As to the arrest of McKnight, the police had a reasonable belief that the Ford had to some extent been involved in the armed robbery; that Payne had also been involved; that earlier that day, minutes prior to the robbery, occupants of the Ford had been observed associating with occupants of the Cadillac and one of the occupants of the Cadillac had entered the Ford; that the Cadillac was owned by Payne; and that Payne lied to the police in stating that the auto had not been in Freeport that day. These facts were sufficient to create probable cause in the belief that the occupant of the Cadillac, McKnight, had participated in the commission of the same crime.

■■ A further point in McKnight's argument is that even if probable cause existed, an arrest warrant was necessary since the arrest occurred approximately 7 to 8 hours after the Freeport police put out an all

points bulletin on the Cadillac. We do not agree. The ultimate apprehension of the vehicle and arrest of McKnight was not too remote either in time (9 hours later) or in distance (120 miles). A delay of 8 hours between the time probable cause commenced and the ultimate arrest does not dictate the necessity of a warrant. *People v. Sprovieri,* 43 Ill.2d 223, 226-227 (1969).

McKnight also argues that even if properly arrested, Neebel's watch, taken during a routine prisoner inventory prior to incarceration, could not be used at trial because it was obtained without a warrant. The watch was admitted into evidence not only without objection but by stipulation. Further, defendant did not raise this precise issue in the lower court and we need not consider it for the first time on appeal. *People v. McAdrian,* 52 Ill.2d 250, 253-255 (1972).

■■ Both defendants argue that they were not proven guilty beyond a reasonable doubt on the grounds that there was an insufficient identification. Defendants attack Neebel's identification as vague and uncertain.[1] McKnight emphasizes the fact that Neebel originally neglected to tell the police that he had long sideburns and sunglasses; Brooks emphasizes the fact that Neebel did not originally inform the police that he had a mustache. However, precise accuracy in describing facial characteristics is unnecessary where an identification is positive. (*People v. Catlett,* 48 Ill.2d 56, 63 (1971).) Brooks argues that there was a three inch difference between his actual height and Neebel's description. However, those portions of the record cited by Brooks indicate that the shorter man was described by Neebel as 5'8" or 5'9" and that Brooks is approximately 5'9". Both defendants argue that the time Neebel had to observe the robbers was insufficient basis for identification. The jury was aware of Neebel's testimony that he had observed the face of the taller man for 15 to 20 seconds and the shorter man for 10 seconds. Ten seconds of observation of a person during commission of a crime is not, as a matter of law, insufficient for eyewitness identification. Neebel's watch, having been found on McKnight's person, and the cash register receipt discovered in the car which McKnight was driving on the day of the crime, additionally established his guilt. Neebel positively identified both defendants at trial and a positive identification by a single witness who has ample opportunity for observation is sufficient to support a conviction. (*People v. Rodgers,* 53 Ill.2d 207, 214 (1972); *People v. Stringer,* 52 Ill.2d 564, 569 (1972).) We hold that the guilt of both defendants was established beyond a reasonable doubt.

---

[1] Defendants also question the identifications made by Mrs. Roth and Mrs. Rideout. The State admits that neither of these witnesses could give testimony sufficient to establish the identity of the accused.

Defendant also contend they were denied adequate representation by counsel. After a review of the record we find no merit to this contention.

Defendants claim that the court denied their requests for probation because they had requested a jury trial. The probation officer's reports stated that because of the serious nature of the offense together with a jury trial, the defendants would not be good prospects for probation. They interpret this to mean that the probation officer did not recommend probation because of the jury trial and that the judge followed such recommendation. Defendants ignore the evidence at the hearing for probation wherein the probation officer testified that he did not feel defendants should be penalized because they had received a jury trial. Regardless, the trial court is not bound by a probation officer's recommendation and the record is void of any indication that the trial judge denied probation because defendants requested a jury trial. In an attempt to further substantiate their position on this issue, defendants state that Payne was involved in the armed robbery to the same extent as themselves but was granted probation. They overlook the fact that Payne pled guilty to a less serious offense (aiding and concealing a fugitive). We find no error in denying defendants probation.

Taken with the case were motions for summary modification of sentences. Defendants argue that the provisions of the new Unified Code of Corrections (Ill. Rev. Stat., (1972 Supp.), ch. 38, sec. 1005—1—1 *et seq.*) govern their sentencing, that the Code provides a minimum of four years incarceration upon conviction for armed robbery, that their five year minimum sentences are excessive, and, therefore, their sentences should be reduced to a minimum of four years an a maximum of 12 years.

■■ While the new Code controls the instant case, its sentencing provisions only apply "if they are less than under the prior law upon which the prosecution was commenced." (Ill. Rev. Stat., (1972 Supp.), ch. 38, sec. 1008—2—4.) Here the prosecution was commenced under section 18—2(b) of the Criminal Code (Ill. Rev. Stat. 1969, ch. 38, sec. 18—2(b)), which provided a penalty of any indeterminate term with a minimum of not less than 2 years. Since the sentencing provision of the Code is greater than under the prior law, the new Code does not apply. Defendants' motions are denied.

Finding no error, we affirm the judgment of the trial court.

Judgment affirmed.

GUILD, P. J., and SEIDENFELD, JJ., concur.