*In re* REGINALD WINSLOW, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* REGINALD WINSLOW, Respondent-Appellant.)

First District (4th Division)   No. 62912

Opinion filed March 10, 1977.

APPEAL from the Circuit Court of Cook County; the Hon. RAYMOND C. SODINI, Judge, presiding.

James J. Doherty, Public Defender, of Chicago (David W. Hirschboeck, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Kevin Sweeney, and Linda D. Woloshin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

The respondent, Reginald Winslow, was arrested on December 25, 1974. A petition was filed in the Circuit Court of Cook County, County Department, Juvenile Division, charging him with the criminal offense of robbery in violation of section 18—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 18—1). The respondent was 16 years of age at the time of his arrest. Subsequent to an adjudicatory hearing before the Honorable Raymond C. Sodini on January 9, 1975, the respondent was found to be delinquent and was committed to the Department of Corrections, Juvenile Division. The respondent appeals.

The sole issue presented on review is whether or not the State proved the respondent guilty beyond a reasonable doubt as to the offense charged.

The complainant, Max Maximillian, testified through an interpreter at the hearing. He stated that on December 25, 1974, at approximately 8 p.m., he was walking at 118th Street and Michigan Avenue in the city of Chicago. He was approached by two youths, the larger of whom said to him, "Give me the watch, give me the money." At the hearing, Maximillian identified the respondent as the smaller youth who had placed his hand in the victim's pocket and removed the sum of $15. The other youth removed the victim's wrist watch and kicked him in the hip.

On cross-examination, Maximillian testified that he was robbed at 120th Street and Indiana Avenue, at "about 8 o'clock, 8:30 in the evening." He stated that a "sister" was with him at the time of the robbery; however, she was not robbed. It took Maximillian approximately one-half hour to proceed directly to a nearby 7-Eleven food store after he was robbed. The store was located 1 block from the scene of the occurrence at the corner of 120th Street and Michigan Avenue. The witness stated that his leg was injured. Approximately 15 minutes elapsed between the time he entered the store and when, after obtaining change, he called the police. He was not accompanied into the store because his sister had gone to the police. Maximillian testified that he was in a corner of the store when he observed the respondent enter. He had already called the police and did nothing further at this time. Maximillian believed that the respondent saw him when he entered the store. He testified that after Winslow had observed him in the corner, the respondent and his friend remained in the store for 20 minutes until the police arrived. The two youths did not approach the witness while in the store. When the police arrived, Maximillian identified the respondent and his companion as the assailants who had robbed him.

The record reveals that Maximillian was required to take regular medication due to an illness. His prescription was for Phenobarbital and Dilantin. He was not allowed to consume any alcohol while under the prescribed medication. Maximillian had taken his medication on that evening. When asked whether or not he had been drinking that evening, Maximillian replied, "I am sick. I cannot drink."

Maximillian testified that a watch, a package of cookies, and $15 were taken from him when he was robbed. The State then requested leave to amend the petition to conform with the proof, as the petition indicated that the complainant had been robbed of $60. Reswearing and reaffirmation of the petition was waived.

The defense called Ernest McKenna, the youth arrested with the respondent, to testify. He related that he and the respondent met at his home at 542 East 43rd Street around 6 p.m. They phoned their friend, Teresa Brown, and asked for her address. They then "caught the 34th and Michigan bus to 120th." They arrived at 120th Street and Michigan Avenue at approximately 6:30 p.m. Since they had missed their stop, the boys walked back to 119th Street and again phoned Teresa for directions to her home. She advised them to go to the 7-Eleven store and wait for her there. McKenna testified that they had been in the store for approximately 1 minute before the complainant ran out and flagged down the police. He stated that he had never seen Maximillian before entering the 7-Eleven store, and that he was not aware that the complainant was flagging down the police to arrest him. The respondent was in his company the entire

evening from the time they left his house until they were arrested. McKenna testified that he and the respondent were searched by the police in the 7-Eleven store; they found his keys. The two were then arrested and taken to the police station.

McKenna testified that when he first observed the complainant in the 7-Eleven store, he believed him to be a security guard. He noticed that when they entered the store, the complainant behaved as if he were frightened. The complainant "seemed like he was drunk or something." McKenna noticed that Maximillian's eyes were red, but stated that he did not get close enough to smell his breath. He saw the complainant running and observed that when he returned to the store he was bent over.

Mrs. Elsie McKenna testified that her son, Ernest, and his friend, the respondent, were at her home on the evening in question, sometime between the hours of 5 and 7 p.m. She then stated that the two youths left her house to visit the home of their friend, Teresa Brown, at approximately 6 that evening.

Teresa Brown testified that she resided at 12046 Wentworth Avenue at the time of the incident. She received the first phone call from the respondent at approximately 6:15 p.m. on December 25, 1974, and gave him directions to her home. She stated that she received the second phone call from Ernest McKenna at "about 20 minutes to 8, or a little after 8." He told her that he was in a phone booth; she told him to go to the 7-Eleven store and that she would meet them there. Teresa reached the store 10 minutes later. When she arrived at the store, the respondent, McKenna, and the police were all present. The police then put her in a squad car and questioned her. When asked who was present in the car, the witness replied, "Me and my friend, and the man who said he robbed him, and his sister, I think." Teresa noticed that the complainant's eyes were red and his breath smelled like alcohol. She was sitting next to him and had occasion to smell his breath because he was talking to her. The complainant was attempting to converse with her in English, but she did not respond to him because she could not understand him. Teresa was taken to a police station and searched. No proceeds were recovered from her person. She was not arrested.

On cross-examination, Teresa testified that she did not arrive at the 7-Eleven store until after 11 o'clock that evening. She admitted that the second phone call, made from the phone booth, was received by her shortly before her arrival.

The respondent, Reginald Winslow, testified that on December 25, 1974, he met McKenna in front of McKenna's house at 44th and Forrestville. He had made a phone call from his home to Teresa Brown at approximately 6 p.m. He and McKenna left McKenna's house and caught a bus at 43rd and State Street. He had $4 at the time and paid both bus

fares. They rode that bus to the end of its line and then caught the "34th and Michigan bus." They rode that bus to 120th Street and Michigan where they got off, walked back to 119th Street, and called Teresa Brown. The respondent concurred with Ernest McKenna as to the events occurring subsequent to the second phone call and upon their arrival at the 7-Eleven store. The respondent could not remember what time it was when he and McKenna had reached 120th Street and Michigan Avenue.

The respondent testified that he observed Maximillian when he and McKenna entered the 7-Eleven store, and that he had never seen him prior to that time. The complainant did not approach the respondent or in any way attempt to detain him inside the store. He did not see Maximillian summon the police outside the store. He was at the counter purchasing a package of "Cheetos" when he was arrested. The respondent stated that he and McKenna had been in the store "about 5 or 10 minutes" prior to their arrest. The police conducted a search of his person and removed from him money and his wallet. According to the respondent, the police removed $2 and some change from his pockets. The respondent stated that he never saw his companion take Maximillian's watch or kick him. He denied that he took $15 from Mr. Maximillian.

■■ The respondent contends that the State failed to prove him guilty of robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—1) beyond a reasonable doubt. The respondent argues that the testimony of the complainant was confused, inconsistent and incredible, and therefore insufficient to sustain his conviction on review. (*People v. Stevenson* (1962), 25 Ill. 2d 361, 365, 185 N.E.2d 199.) The Illinois Supreme Court held in *Stevenson* that:

> "[A] judgment of conviction can be sustained only upon credible evidence that removes all reasonable doubt of guilt, and where the evidence of the prosecution is improbable, unconvincing or contrary to human experience, we will not hesitate to reverse a judgment of conviction."

The respondent maintains that the events of that evening as related by the complainant are improbable. According to the respondent, it is not probable that after robbing Maximillian, he would remain in a store with him and wait for the police. The respondent also asserts the fact that only $2 and some change were found on his person.

The State contends that it met the burden imposed by the law to prove a criminal defendant guilty of the offense charged beyond a reasonable doubt. The State maintains that although there were minor inconsistencies in the testimony of Mr. Maximillian, his testimony is credible, and asserts that a court of review should not substitute its judgment for that of the trial judge where, as in the instant case, the entire case turns on weighing the credibility of the witnesses. The State cites *People v. Tensley* (1954), 3 Ill. 2d 615, 621, 122 N.E.2d 155, as authority.

We must agree with the State in the instant case, and upon a review of the evidence sustain the respondent's conviction.

In the instant case, the uncorroborated testimony of one credible witness can be sufficient to sustain a conviction even when contradicted by the accused. (*People v. Anthony* (1963), 28 Ill. 2d 65, 69, 190 N.E.2d 837; *People v. Williams* (1968), 104 Ill. App. 2d 329, 333, 244 N.E.2d 347.) Thus, the issue becomes one of credibility. If the testimony of the complainant was credible, then his uncorroborated testimony may be sufficient to sustain the respondent's conviction.

■■ It has been held that a positive identification made by a single witness is sufficient to support a conviction where that witness has had ample opportunity to observe the perpetrator, even though the witness may at some point express uncertainty. (*People v. Harris* (1974), 23 Ill. App. 3d 77, 318 N.E.2d 498 (abstract); *People v. Brooks* (1973), 13 Ill. App. 3d 1003, 1007, 301 N.E.2d 496.) In *Brooks*, the court found that the defendant's guilt had been established beyond a reasonable doubt. The identification made by the key witness was positive and therefore sufficient to convict the defendant, even though the witness' description of defendant's facial characteristics was not precisely accurate.

In *People v. Guido* (1962), 25 Ill. 2d 204, 209, 184 N.E.2d 858, the Illinois Supreme Court held that upon a review of that record, the evidence fully supported the judgment of the trial court. In making its determination, the court in *Guido* considered that the testimony of the complaining witness was " * * * positive on all material matters, was unshaken on cross-examination and was not so unreasonable or improbable as to be unworthy of belief."

The *Guido* case, as does the instant case, involved conflicting evidence as to material facts. The court stated therein that: "A conviction will not be set aside merely because the evidence is contradictory, and a conviction depending upon the weight of the evidence will not be set aside except to prevent an apparent injustice." (*People v. Guido*, at 208.) The Illinois Supreme Court held in *People v. Coulson* (1958), 13 Ill. 2d 290, 295-96, 149 N.E.2d 96, that when the evidence pertinent to the material facts in issue is conflicting and cannot be reconciled, " * * * it is the duty of a jury, or of a court sitting without a jury, to determine the credibility of the witnesses and the weight to be given their testimony, and on review, this court will not substitute its judgment for that of the jury or trial court."

■■ We find that in the instant case, the judgment of the trial court was not erroneous. The court could reasonably have found the respondent guilty of the offense charged. The testimony of the complainant was credible in that it was positive on all material matters, unshaken on cross-examination and was not so unreasonable or improbable as to be

unworthy of belief. (*People v. Guido* (1962), 25 Ill. 2d 204, 209, 184 N.E.2d 858.) His testimony as to the time and sequence of the events of that evening did not waver. Exclusive of some uncertainty as to the exact address of the intersection where the robbery occurred, his testimony on cross-examination remained unwavering. A minor discrepancy in the testimony of a witness does not render his testimony patently incredible. The complainant was positive in his identification of the respondent as the person who robbed him and had ample opportunity on several occasions to observe him. (*People v. Brooks* (1973), 13 Ill. App. 3d 1003, 1007, 301 N.E.2d 496.) The testimony of Mr. Maximillian is sufficient to sustain the conviction. It is not apparent that Reginald Winslow was the victim of any injustice. We find that the record fully supports the judgment of the trial court.

In accordance with the above findings, the conviction of the respondent for the offense of robbery is affirmed.

Affirmed.

DIERINGER, P. J., and SULLIVAN, J., concur.